1
2
3
4
5
6
7
8
9
10 **UNITED STATES DISTRICT COURT**
11 **WESTERN DISTRICT OF WASHINGTON**
12 **AT TACOMA**
13 _____
14                                                          :
15 **SECURITES AND EXCHANGE COMMISSION,**        :
16                                                          :
17                        *Plaintiff*,                     :
18                                                          :
19            **v.**                                       :        **No. _____**
20                                                          :
21 **MIKHAIL GALAS, ALEXANDER HAWATMEH,**        :
22 **CHRISTOPHER MWROCA, and TOVY PUSTOVIT,**   :        **COMPLAINT**
23                                                          :
24                   *Defendants*, *and*                  :
25                                                          :
26 **NADIA HAWATMEH,**                            :
27                                                          :
28                   *Relief Defendant*.                  :
29 _____ :
30
31
32

33        Plaintiff Securities and Exchange Commission (the "Commission") for its complaint

34 against Mikhail Galas ("Galas"), Alexander Hawatmeh ("A. Hawatmeh"), Christopher Mrowca,

35 ("Mrowca"), and Tovy Pustovit ("Pustovit"), as defendants (collectively, "Defendants"), and

36 Nadia Hawatmeh ("N. Hawatmeh") as relief defendant ("Relief Defendant"), alleges as follows:

37

1          **SUMMARY OF ALLEGATIONS**

2          1.      This emergency action is brought to stop an ongoing market manipulation and

3    pump-and-dump scheme.  The Defendants – Mikhail Galas, Alexander Hawatmeh , Christopher

4    Mrowca and Tovy Pustovit – acting in concert, engaged in manipulative trading techniques such

5    as wash trading and matched orders in order to artificially inflate the stock prices of numerous

6    thinly-traded microcap companies, including ISM International, Inc. ("ISML"), Allied Products,

7    Corp. ("ADPC"), Aden Solutions, Inc. ("ADSU"); GrowLife, Inc. ("PHOT"); Hemp, Inc.

8    ("HEMP"); and Riverdale Oil and Gas Corporation ("RVDO").

9          2.      The Defendants' manipulative trading created the illusion of an active market in

10   these stocks, which caused the stock price to artificially increase.  Defendants coordinated their

11   sales of ISML, ADPC, ADSU, PHOT, HEMP and RVDO with aggressive promotions of the

12   stocks over the Internet and via social media.    Defendants had prior knowledge that these

13   promotions would take place and in some cases promoted these stocks themselves using webs

14   sites they controlled and blast e-mails, and timed their stock sales to benefit from the artificially

15   high price and demand.

16         3.      After accumulating large positions, Defendants sold their shares in these

17   companies.  Defendants' trading in ISML, ADPC, ADSU, PHOT, HEMP and RVDO generated

18   profits for the Defendants of over $2.5 million.

19         4.      In each promotion, potential investors were urged to buy the target stock and told

20   that the price of the stock would rise substantially.  These assertions were misleading because

21   two of the target companies (ADPC and ADSU) had no business operations and there was no

SEC v. Galas et al. No.              2          Securities and Exchange Commission
Complaint                                        Brookfield Place, 200 Vesey Street, Suite 400
                                                 New York, NY 10281-1022
                                                 (212) 336-0174

1     news concerning the other companies that would provide any basis for a significant increase in

2     the price of its stock.

3        5.       Following the stock promotions, the price of the manipulated stocks collapsed,

4     resulting in losses to investors who had purchased the ISML, ADPC, ADSU, PHOT, HEMP or

5     RVDO shares sold by Defendants during the promotions.

6        6.       Upon information and belief, A. Hawatmeh controlled accounts in the name of N.

7     Hawatmeh and used those accounts to trade in ADPC, ADSU and RVDO, generating profits of

8     approximately $35,000 in N. Hawatmeh's accounts.

9                             **VIOLATIONS**

10        7.       By virtue of the conduct alleged herein, Defendants, directly or indirectly, singly

11     or in concert, have engaged and, unless restrained and enjoined will continue to engage in acts,

12     practices, schemes and courses of business that constitute violations of Section 17(a)(1) and (3)

13     of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(1) and (3)] and Sections

14     9(a)(1) and 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§

15     78i(a) and 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R.§ 240.10b-5(a) and (c)].

16                         **JURISDICTION AND VENUE**

17        8.       The Commission brings this action pursuant to the authority conferred upon it by

18     Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange

19     Act [15 U.S.C. § 78u(d)(1)].

SEC v. Galas et al. No.            3         Securities and Exchange Commission
Complaint                                 Brookfield Place, 200 Vesey Street, Suite 400
                                            New York, NY 10281-1022
                                            (212) 336-0174

1       9.      The Commission seeks an emergency order: (a) restraining and enjoining

2   Defendants from further violations; (b) freezing Defendants' and Relief Defendant's assets; (c)

3   prohibiting Defendants from destroying documents; (d) ordering Defendants and Relief

4   Defendants to provide a verified accounting; (e) ordering Defendants to repatriate funds held

5   overseas, and (f) authorizing the Commission to conduct expedited discovery.

6       10.     The Commission seeks a final judgment: (a) permanently enjoining Defendants

7   from engaging in the acts, practices and courses of business alleged against them herein;

8   (b) ordering Defendants and Relief Defendant to disgorge any ill-gotten gains and to pay

9   prejudgment interest thereon, jointly and severally; (c) prohibiting Defendants, pursuant to

10  Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)(1)] and Section 21(d)(6)(A) of the

11  Exchange Act [15 U.S.C. § 78u(d)(6)(A)], from participating in any offering of a penny stock;

12  and (d) imposing civil money penalties on Defendants pursuant to Section 20(d) of the Securities

13  Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

14      11.     This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a)

15  of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(e) and 27 of the Exchange

16  Act [15 U.S.C. §§ 78u(e) and 78aa].

17      12.     Venue lies in the Western District of Washington pursuant to Section 22 (a) of the

18  Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

19  Defendants, directly or indirectly, singly or in concert, have made use of the means and

20  instrumentalities of interstate commerce, or of the mails, in connection with the transactions,

21  acts, practices, and courses of business alleged herein.  Certain of these transactions, acts,

22  practices, and courses of business occurred in the Western District of Washington.  For example,

SEC v. Galas et al. No.                    4        Securities and Exchange Commission
Complaint                                            Brookfield Place, 200 Vesey Street, Suite 400
                                                     New York, NY 10281-1022
                                                     (212) 336-0174

1   A. Hawatmeh, who formerly lived in Vancouver, Washington, and Galas, a resident of

2   Vancouver, Washington, placed some of the orders alleged in this Complaint while resident in

3   the Western District of Washington.

4         13.    Assignment to the Tacoma Division is appropriate pursuant to Local Rule 3(d)(1)

5   because a substantial part of the events that gave rise to the claims alleged herein occurred in

6   Clark County.

7                      **DEFENDANTS AND RELIEF DEFENDANT**

8         14.    Defendant Galas, age 25, lives in Vancouver, Washington.  Galas has traded in

9   over 300 different low-cost, microcap stocks through his accounts at E*Trade Financial Group

10   ("E*Trade") and Fidelity Brokerage Services LLC ("Fidelity").

11         15.    Defendant A. Hawatmeh, age 24, is a resident of Lincoln City, Oregon and a

12   former resident of Vancouver, Washington.  A. Hawatmeh is a member of Worthmore

13   Investments LLC, which owns a stock promotion website, stockhaven.com. In 2013 and 2014,

14   A. Hawatmeh traded in over 100 different microcap stocks in three different accounts at E*Trade

15   and TD Ameritrade, Inc. ("TD Ameritrade").  A. Hawatmeh also maintains an account at the

16   Housing Bank for Trade and Finance in Jordan.  On June 12 and 13, 2013, A. Hawatmeh's father

17   received wire transfers totaling $90,000.  On June 27, 2013, A. Hawatmeh's father transferred

18   $90,000 to A. Hawatmeh's brokerage account at E*Trade, and the next day A. Hawatmeh began

19   accumulating shares of ADSU and ADPC.  In the past several years, A. Hawatmeh transferred

20   about $60,000 to Mrwoca.

21         16.    Defendant Mrowca, age 25, is a former resident of Boulder, Colorado.  He

22   currently lives in Bradenton, Florida.  Mrowca is a stock promoter and operates through an entity

SEC v. Galas et al. No.         5        Securities and Exchange Commission
Complaint                                 Brookfield Place, 200 Vesey Street, Suite 400
                                        New York, NY 10281-1022
                                        (212) 336-0174

1   called Money Runners Group LLC, which has an affiliated stock promotion web site called

2   MoneyRunnersGroup.com.  In 2013and 2014, Mrowca traded in over 150 different low-cost,

3   over-the-counter stocks in three accounts at E*TRADE.

4         17.     Defendant Pustovit, age 20, is a resident of Vancouver, Washington.  Pustovit was

5   the registered owner of a stock promotion website called "Explosive Alerts" from August 2012,

6   when the site was created, until August 2013. In 2013 and 2014, Pustovit traded in over 50

7   different low-cost, over-the-counter stocks in four accounts at E*TRADE and Scottrade

8   Financial Inc. ("Scottrade").  In 2013 and 2014, Pustovit traded in over 50 different low-cost,

9   over-the-counter stocks in four accounts at E*TRADE and Scottrade.

10         18.     Relief Defendant N. Hawatmeh, age 50, is a resident of Hernando, Florida.  . In

11   2013 and 2014, N. Hawatmeh's accounts traded in over 20 different low-cost, over-the-counter

12   stocks in four accounts at E*TRADE and Charles Schwab & Co, ("Schwab").  Based on

13   analyses of Internet protocols, it appears that all or some of the trading in N. Hawatmeh's

14   accounts may have been conducted by A. Hawatmeh, Mrowca, or Pustovit.

15   **<u>RELATED ENTITIES</u>**

16         19.     ISML is a Delaware corporation based in Clearwater, Florida.  The company

17   claims to specialize "in innovation, technology and manufacturing organic products."  The

18   company lists its products as "organic nail polish and nail polish remover, security bra, green

19   energy products, Flea market, [and] movie production."  ISML securities are not registered with

20   the Commission, and ISML common stock is quoted on OTC Link.

SEC v. Galas et al. No.        6       Securities and Exchange Commission
Complaint                       Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0174

1       20.    ADPC is a Delaware corporation that had its principal place of business in

2  Chicago, Illinois.  ADPC was a manufacturer of agricultural and industrial equipment that filed

3  for reorganization under Chapter 11 of the Bankruptcy Code in October 2000.  On November 24,

4  2003, ADPC filed a Form 15 to terminate the registration of its common stock pursuant to

5  Exchange Act Rule 12g-4.  ADPC's last periodic filing with the Commission was its Form 10Q

6  for the quarter ended June 30, 2000.  On February 3, 2014, the Commission entered an order

7  temporarily suspending trading in ADPC securities pursuant to Section 12(k) of the Exchange

8  Act.  Prior to the trading suspension, ADPC common stock was quoted on OTC Link.  During all

9  times relevant to this action, ADPC had no business operations.

10      21.    ADSU is a Nevada corporation that had its principal place of business in Toronto,

11  Canada.  In filings with the Commission, the company purported to be a development stage

12  company focused on "providing travel packages and concierge services to corporate entities and

13  individuals in the United States and Canada."  ADSU's last periodic filing with the Commission

14  was its Form10-Q for the quarter ended September 30, 2011.   ADSU's Nevada corporate

15  registration expired in December 2011.  On December 6, 2013, the Commission temporarily

16  suspended trading in ADSU securities.  ADSU's stock was registered pursuant to Section 12(g)

17  of the Exchange Act until March 21, 2014, when the Commission revoked the registration of

18  ADSU's securities pursuant to Section 12(j) of the Exchange Act.  Prior to the trading

19  suspension, ADSU was quoted on OTC Link.  During all times relevant to this action, ADSU

20  had no business operations.

21      22.    PHOT is a Delaware corporation based in Woodland Hills, California.  In filings

22  with the Commission, the company purports that it is in the oil recovery business and that it has

SEC v. Galas et al. No.          7          Securities and Exchange Commission
Complaint                                   Brookfield Place, 200 Vesey Street, Suite 400
                                              New York, NY 10281-1022
                                            (212) 336-0174

1   set up a subsidiary company, Legalizedpot.us, to manage growers of legalized marijuana and

2   hemp in various states.  PHOT stock is registered under Section 12(g) of the Exchange Act and is

3   quoted on OTC Link.  On April 10, 2014, the Commission issued an order temporarily

4   suspending trading in PHOT securities pursuant to Section 12(k) of the Exchange Act.

5        23.    HEMP is a Colorado corporation based in Las Vegas, Nevada.  In an information

6   statement posted on the OTC Markets web site, the company purports to be in the business of

7   providing lawful products and services to the medical marijuana industry and to provide over-

8   the-counter health products made from industrial hemp.  HEMP stock is not registered with the

9   Commission and is quoted on OTC Link.

10       24.    RVDO is a Nevada corporation based in Austin, Texas.  RVDO is in the business

11  of acquiring partial interests in oil and gas production.  RVDO securities are not registered with

12  the Commission, and RVDO common stock is quoted on OTC Link.

13                              **FACTS**

14  **Trading in ISML**

15       25.    Prior to the promotion of ISML that began on April 20, 2012, A. Hawatmeh

16  engaged in coordinated trading with Mrowca, Galas and others to accumulate a large position in

17  ISML and to increase the price and volume of ISML in advance of the promotion.

18       26.    A. Hawatmeh began buying ISML on December 15, 2011.  By April 10, 2012, A.

19  Hawatmeh had accumulated approximately 2.6 million shares of ISML common stock through

20  market purchases at prices ranging from $.0097 to $.09 per share.

SEC v. Galas et al. No.                8        Securities and Exchange Commission
Complaint                                         Brookfield Place, 200 Vesey Street, Suite 400
                                                  New York, NY 10281-1022
                                                  (212) 336-0174

1   27. A. Hawatmeh's trades in ISML common stock from December 15, 2011 through

2 April 10, 2012 constituted approximately 85% of the total trading volume of ISML common

3 stock during that period.

4   28. From January 18, 2012 to February 10, 2012, Galas acquired 70,000 shares of

5 ISML common stock at prices ranging from $.03 to $.043, which he sold on February 28 for $.07

6 per share.

7   29. From December 15, 2011 through April 10, 2012, the price of ISML rose from

8 less than a penny per share to a high of over $.09 per share.

9   30. From April 11, 2012 through April 19, 2012, A. Hawatmeh was a net seller of

10 ISML, while Galas and Mrowca were net buyers of ISML.

11   31. From April 11, 2012 through April 19, 2012, A. Hawatmeh sold 1.88 million

12 shares of ISML at prices ranging from $.055 to $.12 per share, and purchased approximately

13 280,000 shares at prices ranging from $.04 to $.0951 per share.  A. Hawatmeh's trades during

14 this period constituted approximately 65% of the total trading volume of ISML common stock.

15   32. From April 11, 2012 through April 16, 2012, while A. Hawatmeh was selling

16 ISML, Galas accumulated 170,000 shares of ISML at prices ranging from $.06 to $.07 per share.

17 Between April 11, 2012 and April 19, 2012, Galas was a net buyer of 85,000 shares.

18   33. From April 13, 2012 through April 18, 2012, Mrowca bought and sold 125,000

19 shares of ISML. By close of trading on April 18, 2012, Mrowca owned no shares of ISML.

20   34. A. Hawatmeh, Mrowca, and Galas engaged together in various forms of

21 manipulative trading in ISML common stock, both before and during the promotion of ISML.

SEC v. Galas et al. No.     9   Securities and Exchange Commission
Complaint            Brookfield Place, 200 Vesey Street, Suite 400
               New York, NY 10281-1022
               (212) 336-0174

1       35.    For example, on April 13, 2012, April 16, 2012, April 19, 2012 and April 20,

2    2012, A. Hawatmeh, Mrowca, and Galas entered "matched orders" and "wash trades" of ISML.

3    Some of the orders were matched with orders entered by a third party, identified herein as

4    "Trader A."

5       36.    "Matched orders" occur when a person, for the purpose of creating a false or

6    misleading appearance of active trading in a security, enters an order to buy or sell that security

7    with the knowledge that a substantially similar order has been or will be placed to trade the

8    security.

9       37.    "Wash trades" occur when a security is traded between two accounts with no

10    change in beneficial ownership for the purpose of creating a false or misleading appearance of

11    active trading in the security.

12       38.    A. Hawatmeh entered matched orders for ISML knowing that matching orders

13    had been placed or would be placed in the account of Mrowca, Galas or Trader A.

14       39.    A. Hawatmeh entered matched orders for ISML with the intention of creating a

15    false or misleading appearance of active trading in ISML common stock or a false and

16    misleading appearance with respect to the market for ISML common stock.

17       40.    Mrowca entered matched orders for ISML knowing that matching orders had

18    been placed or would be placed in the account of A. Hawatmeh or Trader A.

19       41.    Mrowca entered matched orders and wash trades for ISML with the intention of

20    creating a false or misleading appearance of active trading in ISML common stock or a false and

21    misleading appearance with respect to the market for ISML common stock.

SEC v. Galas et al. No.          10     Securities and Exchange Commission
Complaint                           Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0174

1      42.      Galas entered matched orders for ISML knowing that matching orders had been

2  placed or would be placed by A. Hawatmeh.

3      43.      Galas entered matched orders and wash trades for ISML with the intention of

4  creating a false or misleading appearance of active trading in ISML common stock or a false and

5  misleading appearance with respect to the market for ISML common stock.

6      44.      A. Hawatmeh's, Mrowca's and Galas's matched orders and wash trades affected

7  the market price and volume of ISML stock.

8      45.      Beginning on April 20, 2012, ISML was the subject of an Internet promotional

9  campaign by Mrowca's stock promotion entity, Money Runners Group LLC, and other

10  promoters.  ISML was also promoted by Mrowca on the Investors Hub web site under the user

11  name "HotStockAce."  The promotions urged investors to buy ISML and claimed that ISML

12  would trade at $.20 per share, although there was no news at the company justifying the

13  prediction or the buy recommendation.

14      46.      A. Hawatmeh, Mrowca and Galas had prior knowledge of the ISML promotion

15  and its timing.

16      47.      On April 20, 2012, A. Hawatmeh sold 995,000 shares of ISML at prices ranging

17  from $.124 to $.20 per share.

18      48.      On April 20, 2012, Galas sold 85,000 shares of ISML at prices ranging from

19  $.129 to $.20 per share.

20      49.      A. Hawatmeh's sales of ISML stock from April 12, 2012 through April 20, 2012

21  generated gross profits of approximately $223,000.

1        50.     Galas's sales of ISML stock through April 20, 2012 generated gross profits of

2    approximately $15,000.

3        51.     Following the promotion of ISML, the price and volume of ISML stock collapsed.

4    The trading volume of ISML stock on April 20, 2012 was almost 5 million shares with a high

5    price of $.22 per share.  By May 20, 2012, the price had declined to $.03 per share and the

6    trading volume was only 33,200 shares.

7

1    **Trading in ADPC**

2    52.    From June 14, 2013 through the early morning of July 2, 2013, over 2.9 million

3    shares of ADPC common stock was accumulated in A. Hawatmeh's, N. Hawatmeh's and

4    Pustovit's accounts through market purchases at prices ranging from $.0018 to $.03 per share.

5    53.    The ADPC trades in N. Hawatmeh's account were controlled by A. Hawatmeh.

6    54.    The ADPC trades in A. Hawatmeh's, N. Hawatmeh's and Pustovit's accounts

7    from June 14, 2013 through July 1, 2013 constituted over 90% of the total trading volume of

8    ADPC common stock during that period.

9    55.    The price of ADPC common stock rose from $.008 per share on June 14, 2013, to

10    $.025 per share on July 1, 2013.

11    56.    From June 19, 2013 to July 1, 2013, matched orders for ADPC common stock

12    were entered in the accounts of A. Hawatmeh, N. Hawatmeh and Pustovit.

13    57.    On July 1, 2013, Pustovit engaged in two wash trades of ADPC common stock.

14    58.    A. Hawatmeh entered matched orders for ADPC (including orders in the N.

15    Hawatmeh account) knowing that matching orders had been placed or would be placed in the

16    account of N. Hawatmeh or Pustovit.

17    59.    Pustovit entered matched orders for ADPC knowing that matching orders had

18    been placed or would be placed by in the account of A. Hawatmeh or N. Hawatmeh.

19    60.    A. Hawatmeh and Pustovit entered the matched orders for ADPC (including

20    orders in the N. Hawatmeh account) with the intention of creating a false or misleading

21    appearance of active trading in ADPC common stock or a false and misleading appearance with

22    respect to the market for ADPC common stock.

SEC v. Galas et al. No.          13      Securities and Exchange Commission
Complaint                                 Brookfield Place, 200 Vesey Street, Suite 400
                                          New York, NY 10281-1022
                                          (212) 336-0174

1        61.     On July 1, 2013, Pustovit sold ADPC common stock in an account at one broker-

2   dealer, identified herein as "B-D 1" and at the same time bought an equal amount of ADPC

3   common stock in an account in his name at another broker-dealer, identified herein as "B-D 2."

4   These transactions did not result in a change in the beneficial ownership of the ADPC stock

5   being traded.

6        62.     Pustovit effected these wash trades with the intention of creating a false or

7   misleading appearance of active trading in ADPC common stock or a false and misleading

8   appearance with respect to the market for ADPC common stock.

9        63.     The Defendants matched orders and wash trades of ADPC stock affected the price

10   and volume of ADPC stock. These orders accounted for trading volume of over 4.1 million

11   shares of ADPC common stock, approximately 50% of the total volume during the period from

12   June 19, 2013 to July 1, 2013.

13        64.     Starting on the morning of July 2, 2013, there was an e-mail and Internet

14   promotion of ADPC stock by a stock promoter using the name "Explosive Alerts."

15        65.     Pustovit was the registered owner of the Explosive Alerts website at this time.

16        66.     At or around 10 AM eastern time on July 2, 2013, Explosive Alerts broadcast the

17   following spam e-mail:

18      **ADPC buy Alert!**

19      **Alerting ADPC here at .0255**

20      **We strongly believe ADPC could see .08+ today!**

21      **By the time you finish reading this email ADPC will probably have rose 5% or**
22      **maybe even 10% so stop wasting your time and go make some damn money!**

SEC v. Galas et al. No.          14     Securities and Exchange Commission
Complaint                          Brookfield Place, 200 Vesey Street, Suite 400
                                    New York, NY 10281-1022
                                    (212) 336-0174

1

2       67.     Explosive Alert's price rise prediction was baseless, since ADPC had no business

3  operations at the time of the promotion.

4       68.     Between 10:00 AM and 10:40 AM eastern time on July 2, 2013, A. Hawatmeh

5  sold 2,720,000 shares of ADPC common stock in his account at E*TRADE at prices ranging

6  from $.025 to $.071 per share.

7       69.     A. Hawatmeh and Pustovit had prior knowledge of the ADPC promotion and its

8  timing.

9       70.     A. Hawatmeh's sales of ADPC from June 14, 2013 through July 2, 2013

10  generated gross profits of approximately $53,970.

11      71.     Pustovit's sales of ADPC from June 14, 2013 through July 2, 2013 generated

12  profits of approximately $42,200.

13      72.     Following the promotion of ADPC, the price and volume of ADPC stock

14  collapsed.  The trading volume of ADPC stock on July 2, 2014 was over 9.8 million shares with

15  a high price of $.08 per share.  By July 12, 2013, the price had declined to $.0031 per share and

16  the trading volume was only 35,500 shares.

17  **Trading in ADSU**

18      73.     From June 28, 2013 through November 5, 2013, over 6.6 million shares of ADSU

19  common stock was accumulated in A. Hawatmeh's and N. Hawatmeh's accounts through market

20  purchases at prices ranging from $.0032 to $.048 per share.

21      74.     The trading in ADSU common stock in N. Hawatmeh's account was controlled

22  by A. Hawatmeh.

SEC v. Galas et al. No.        15     Securities and Exchange Commission
Complaint                    Brookfield Place, 200 Vesey Street, Suite 400
                           New York, NY 10281-1022
                           (212) 336-0174

1       75.     From June 28, 2013 through July 22, 2013, A. Hawatmeh's and N. Hawatmeh's

2  accounts purchased a total of 3,960,000 shares of ADSU common stock in market trades at

3  prices ranging from $.0032 to $.018 per share.  These trades constituted over 90% of the total

4  trading volume of ADSU common stock during that period.

5       76.     On July 2, 2013, the A. Hawatmeh and N. Hawatmeh accounts entered matched

6  orders for 10,000 shares of ADSU common stock that were executed at $.07.

7       77.     ADSU's price rose from $.009 per share on June 28, 2013 to $.0181 per share on

8  July 22, 2013.

9       78.     On August 23, 2013, the A. Hawatmeh and N. Hawatmeh accounts entered

10  matched orders by which the entire 2,850,000 shares of ADSU common stock  in N.

11  Hawatmeh's account was sold to A. Hawatmeh at $.09 per share.

12       79.     Following the matched orders on August 23, 2013, and through November 5,

13  2013, A. Hawatmeh purchased an additional 2,905,950 shares of ADSU common stock in

14  market trades at prices ranging from $.005 per share to $.0481 per share.

15       80.     Trading in A. Hawatmeh's and N. Hawatmeh's accounts from August 23, 2013

16  through November 5, 2013, including the matched orders, constituted  over 90% of the total

17  trading volume in ADSU during this period.  By November 5, 2013, A. Hawatmeh's account

18  held over 6.6 million shares of ADSU.

19       81.     A. Hawatmeh entered matched orders for ADSU (including orders entered in the

20  N. Hawatmeh account) knowing that matching orders had been placed or would be placed in the

21  A. Hawatmeh or N. Hawatmeh account.

SEC v. Galas et al. No.         16     Securities and Exchange Commission
Complaint                        Brookfield Place, 200 Vesey Street, Suite 400
                                   New York, NY 10281-1022
                                   (212) 336-0174

1       82.     A. Hawatmeh entered matched orders with the intention of creating a false or

2   misleading appearance of active trading in ADSU common stock or a false and misleading

3   appearance with respect to the market for ADSU common stock.

4       83.     The matched orders in A. Hawatmeh's and N. Hawatmeh's accounts affected the

5   market price and volume of ADSU stock.  For example, the 2,850,000 share matched order on

6   August 23, 2013 accounted for 93% of the market volume on that day.

7       84.     On November 7 and November 8, 2013, there was an aggressive promotion of

8   ADSU over the Internet and social media claiming that ADSU would trade at $2 per share.  This

9   assertion was baseless since ADSU had no business operations at the time of the promotion.

10       85.     On November 7 and November 8, 2013, A. Hawatmeh sold his entire 6.6 million

11   share position in ADSU at prices ranging from $.045 to $.24 per share.

12       86.     A. Hawatmeh had prior knowledge of the ADSU promotion and its timing

13       87.     A. Hawatmeh's sales of ADSU stock from June 28, 2013 through November 08,

14   2013 generated gross profits of approximately $425,000.

15       88.     On November 8, 2013, B-D 1, through which A. Hawatmeh traded ADSU, froze

16   A. Hawatmeh's account.  At the time of the freeze, the account contained positions in numerous

17   microcap stocks and approximately $486,000 in cash.

18       89.     The trading volume for ADSU common stock on November 7 and 8, 2013 was

19   4,121,053 shares and 11,897,090 shares, respectively.  The price of ADSU common stock

20   peaked on November 7, at $.24 per share.  By December 4, 2013, the daily volume of ADSU

21   common stock had declined to approximately 186,000 shares and the price had declined to $.01

22   per share.

SEC v. Galas et al. No.         17     Securities and Exchange Commission
Complaint                                  Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0174

**Trading in PHOT**

90.     From January 9 to January 14, 2014, there was an Internet promotion of PHOT as part of a broader promotion of several marijuana-related stocks.

91.     During that promotion, Mrowca and Galas traded approximately 6.4 million shares of PHOT common stock, and during and leading up to the promotion engaged in manipulative trading designed to increase the price and volume of PHOT common stock.

92.     From January 2, 2014 through January 14, 2014, Mrowca engaged in wash trades of PHOT common stock and also engaged in matched orders of PHOT common stock with Galas.

93.     Mrowca used "limit orders" to execute his wash trades of PHOT common stock.

94.     A "limit order" is an order to a broker to buy or sell a security that sets a particular price, the "limit price," at which the broker is authorized to execute the transaction.

95.     For each wash trade of PHOT common stock, Mrowca entered a limit order to sell that had a lower limit price than the corresponding limit order to buy.  The purpose of Mrowca's sell low/buy high strategy was to increase the stock price.

96.     Mrowca entered matched orders for PHOT common stock knowing that matching orders had been placed or would be placed by Galas.

97.     Galas entered matched orders for PHOT common stock knowing that matching orders had been placed or would be placed by Mrowca.

98.     Mrowca entered matched orders and wash trades for PHOT common stock with the intention of creating a false or misleading appearance of active trading in PHOT common stock or a false and misleading appearance with respect to the market for PHOT common stock.

99.    Galas entered matched orders for PHOT common stock with the intention of creating a false or misleading appearance of active trading in PHOT common stock or a false and misleading appearance with respect to the market for PHOT common stock.

100.    From January 2, 2014 to January 9, 2014, while the manipulative trading was taking place, the price of PHOT increased 196% from $.1575 per share to a high of $.467 per share.

101.    By January 14, 2014, Mrowca and Galas had liquidated their PHOT holdings, generating gross profits of approximately $54,700 for Mrowca and $3,200 for Galas.

102.    From March 6, 2014 through March 18, 2014, Mrowca promoted PHOT through Money Runners Group, LLC and its related website, MoneyRunnersGroup.com.  The promotion touted the marijuana industry, and predicted that PHOT's stock price would nearly double.

103.    During that promotion, A. Hawatmeh, Mrowca and Galas engaged in manipulative trading designed to increase the price and volume of PHOT common stock and they then sold their stock.

104.    On March 6, 2014, shares of PHOT opened at $.3865 per share. During the promotion, from March 6, 2014 to March 18, 2014, PHOT's daily average market volume increased to over 60 million shares per day and PHOT traded as high as $.7777 per share.  This was a 101% price increase from March 6, 2014.

105.    From March 6 to March 18, 2014, Mrowca, Galas, and A. Hawatmeh collectively traded approximately 17 million shares of PHOT.

106.    During the period March 6, 2014 through March 17, 2014, Mrowca engaged in wash trades, and in matched orders with Galas and A. Hawatmeh.

SEC v. Galas et al. No.    19    Securities and Exchange Commission
Complaint                              Brookfield Place, 200 Vesey Street, Suite 400
                                       New York, NY 10281-1022
                                       (212) 336-0174

1       107.    Mrowca entered matched orders for PHOT knowing that matching orders had

2  been placed or would be placed by Galas or A. Hawatmeh.

3       108.    Galas entered matched orders for PHOT knowing that matching orders had been

4  placed or would be placed by Mrowca.

5       109.    A. Hawatmeh entered matched orders for PHOT knowing that matching orders

6  had been placed or would be placed by Mrowca.

7       110.    Mrowca entered the matched orders and wash trades for PHOT with the intention

8  of creating a false or misleading appearance of active trading in PHOT common stock or a false

9  and misleading appearance with respect to the market for PHOT common stock.

10      111.    Galas entered the matched orders for PHOT with the intention of creating a false

11  or misleading appearance of active trading in PHOT common stock or a false and misleading

12  appearance with respect to the market for PHOT common stock.

13      112.    A. Hawatmeh entered the matched order for PHOT with the intention of creating

14  a false or misleading appearance of active trading in PHOT common stock or a false and

15  misleading appearance with respect to the market for PHOT common stock.

16      113.    A. Hawatmeh's, Mrowca's and Galas's matched orders and wash trades affected

17  the market price and volume of PHOT stock.

18      114.    By March 18, 2014, Mrowca, Galas and A. Hawatmeh had sold the positions in

19  PHOT stock each of them had built up since January 14, 2014.

20      115.    From December 16, 2014 through March 2014, trading in PHOT common stock

21  in Mrowca's accounts generated gross profits of approximately $111,000; trading in PHOT

22  common stock in Galas' account generated gross profits of approximately $6,000; and trading in

SEC v. Galas et al. No.         20     Securities and Exchange Commission
Complaint                           Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0174

1   PHOT common stock in A. Hawatmeh's account generated a gross loss of approximately

2   $17,000.

3       116.   On April 10, 2014, the Commission suspended trading in PHOT securities.

4   **Trading in HEMP**

5       117.   A. Hawatmeh, Galas and Mrowca began accumulating HEMP common stock

6   through market purchases on January 23, 2014.  Between January 23, 2014 and February 12,

7   2014, A. Hawatmeh, Galas, and Mrowca bought and sold approximately 41.7 million shares of

8   HEMP common stock.

9       118.   During the period from January 24 through February 12, 2014, HEMP was

10   actively promoted on the Internet.

11       119.   For example, on February 6, 2014, one Internet tout claimed that HEMP could

12   reach "a REAL Possible Gain of OVER 2900%."

13       120.   During the promotion, A. Hawatmeh, Mrowca and Galas engaged in manipulative

14   wash trades and matched orders of HEMP common stock.

15       121.   The total trading volume for HEMP common stock in the A. Hawatmeh, Mrowca,

16   and Galas accounts during this period was approximately 83 million shares.

17       122.   Mrowca engaged in wash trades of HEMP common stock using two accounts in

18   his name at B-D 1 (the "Mrowca #1" and "Mrowca #2" accounts).

19       123.   For each wash trade of HEMP common stock, Mrowca entered a limit order to

20   sell that had a lower limit price than the corresponding limit order to buy.  The purpose of

21   Mrowca's sell low/buy high strategy was to increase the stock price.

SEC v. Galas et al. No.          21     Securities and Exchange Commission
Complaint                           Brookfield Place, 200 Vesey Street, Suite 400
New York, NY 10281-1022
(212) 336-0174

1        124.    Mrowca also engaged in matched orders of HEMP common stock with Galas, A.

2    Hawatmeh, and a third party identified herein as "Trader B."

3        125.    From January 24, 2014 through February 12, 2014, while these manipulative

4    trades were taking place, HEMP's stock price increased by 573%.

5        126.    Mrowca entered matched orders for HEMP common stock knowing that matching

6    orders had been placed or would be placed by Galas or A. Hawatmeh.

7        127.    Galas entered matched orders for HEMP common stock knowing that matching

8    orders had been placed or would be placed by Mrowca.

9        128.    A. Hawatmeh entered matched orders for HEMP common stock knowing that

10   matching orders had been placed or would be placed by Mrowca.

11       129.    Mrowca entered the matched orders and wash trades for HEMP common stock

12   with the intention of creating a false or misleading appearance of active trading in HEMP

13   common stock or a false and misleading appearance with respect to the market for HEMP

14   common stock.

15       130.    Galas entered the matched orders for HEMP common stock with the intention of

16   creating a false or misleading appearance of active trading in HEMP common stock or a false

17   and misleading appearance with respect to the market for HEMP common stock.

18       131.    A. Hawatmeh entered the matched order for HEMP common stock with the

19   intention of creating a false or misleading appearance of active trading in HEMP common stock

20   or a false and misleading appearance with respect to the market for HEMP common stock.

21       132.    A. Hawatmeh's, Mrowca's and Galas's matched orders and wash trades affected

22   the market price and volume of HEMP common stock.

SEC v. Galas et al. No.                    22        Securities and Exchange Commission
Complaint                                            Brookfield Place, 200 Vesey Street, Suite 400
                                                     New York, NY 10281-1022
                                                     (212) 336-0174

1    133.    The price and volume of HEMP has collapsed since February 12, 2014. On June

2    24, 2014, the volume was approximately 7.4 million shares and the closing price was $.0590 per

3    share.

4    134.    During the period of the manipulative trading, from January 24 through February

5    12, 2014, sales of HEMP common stock in the Mrowca account generated gross profits of

6    approximately $106,000; sales of HEMP common stock in the A. Hawatmeh account generated

7    gross profits of approximately $229,000; and sales of HEMP common stock in the Galas account

8    generated gross profits of approximately $12,500.

9    **Trading in RVDO**

10    135.    From February 7, 2014 through March 4, 2014, A. Hawatmeh's and N.

11    Hawatmeh's accounts accumulated a total of approximately 3.3 million shares of RVDO

12    common stock through market purchases at prices ranging from $.01 to $.102 per share.

13    136.    A. Hawatmeh controlled the RVDO trading in N. Hawatmeh's account.

14    137.    The RVDO trades in A. Hawatmeh's and N. Hawatmeh's accounts constituted

15    over 50% of the market volume for RVDO common stock during the period from February 7,

16    2014 through March 4, 2014. The price of RVDO common stock rose from an opening price of

17    $.01 per share on February 7, 2014 to a closing price of $.06 on March 4, 2014.

18    138.    From February 7, 2014 through February 28, 2014, A. Hawatmeh entered at least

19    20 matched orders for RVDO common stock in his account or N. Hawatmeh's account. These

20    orders were matched with orders entered by third parties identified herein as Trader C, Trader D,

21    Trader E, and Trader F.

SEC v. Galas et al. No.                    23       Securities and Exchange Commission
Complaint                                            Brookfield Place, 200 Vesey Street, Suite 400
                                                     New York, NY 10281-1022
                                                     (212) 336-0174

1       139.    A. Hawatmeh entered matched orders for RVDO common stock knowing that

2    matching orders had been placed or would be placed by Trader C, Trader D, Trader E or Trader

3    F.

4       140.    A. Hawatmeh entered matched orders for RVDO common stock with the

5    intention of creating a false or misleading appearance of active trading in RVDO common stock

6    or a false and misleading appearance with respect to the market for RVDO common stock.

7       141.    The matched orders of RVDO in A. Hawatmeh's and N. Hawatmeh's accounts

8    affected the price and volume of RVDO stock.  The matched orders started at a price of $.0162

9    per share on February 7, 2014, and increased in price to $.07 per share on February 28, 2014,

10    hitting a high of $.075 per share on February 10, 2014.

11       142.    On March 5, 2014, there was a promotion of RVDO over the Internet claiming

12    that RVDO would trade at $2 per share.  The closing price of RVDO on March 4, 2014 was $.06

13    per share.  This claim was misleading because there was no business development at RVDO that

14    would justify such a rise in price.

15       143.    A. Hawatmeh had prior knowledge of the RVDO promotion and its timing.

16       144.    Between 9:30 AM and 09:52 AM Eastern Time on March 5, 2014, A. Hawatmeh

17    sold approximately 3.23 million shares of RVDO common stock at prices ranging from $.28 per

18    share to $.90 per share.

19       145.    A. Hawatmeh's average selling price per share on March 5, 2014 was

20    approximately $.4375 per share, almost an eightfold increase over his average purchase price per

21    share.

SEC v. Galas et al. No.         24      Securities and Exchange Commission
Complaint                              Brookfield Place, 200 Vesey Street, Suite 400
                                       New York, NY 10281-1022
                                       (212) 336-0174

1    146. A. Hawatmeh's gross profits from trading RVDO between February 7, 2014 and

2 March 5, 2014 were over $1.23 million.

3    147. N. Hawatmeh's account sold 95,500 shares of RVDO on March 5, 2014 for gross

4 profits of over $35,800.

5    148. On March 5, 2014, RVDO closed at $.635 per share. Thereafter, the price dropped

6 sharply.  On March 6, 2014, RVDO closed at $.18 per share.

7    149. On March 5, 2014 and March 7, 2014, A. Hawatmeh used $738,000 of the

8 proceeds from his sales of RVDO to purchase precious metals from a refinery based in Oregon.

9           **FIRST CLAIM FOR RELIEF**

10      **Violations of Section 17(a) of the Securities Act**

11            (All Defendants)

12    150. The Commission realleges and incorporates paragraphs 1 through 149 by

13 reference as if fully set forth herein.

14    151. Shares of common stock of ISML, ADPC, ADSU, PHOT, HEMP and RVDO are

15 securities within the meaning of Section 2(1) of the Securities Act [15 U.S.C. § 77b(1)] and

16 Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

17    152. Defendants, directly or indirectly, singly or in concert, in the offer or sale of

18 securities, by the use of the means or instruments of transportation or communication in

19 interstate commerce, or by use of the mails, (a) have employed, are employing, or are about to

20 employ, devices, schemes, or artifices to defraud; (b) have made untrue statements of material

21 fact, or have omitted to state material facts necessary in order to make statements made, in light

SEC v. Galas et al. No.     25   Securities and Exchange Commission
Complaint             Brookfield Place, 200 Vesey Street, Suite 400
                 New York, NY 10281-1022
                 (212) 336-0174

1  of the circumstances under which they were made, not misleading; and/or (c) have engaged, are

2  engaging, or are about to engage in transactions, practices, or courses of business which operate,

3  operated, or would operate as a fraud or deceit upon the purchasers of securities.

4        153.    By reason of the foregoing, Defendants, singly or in concert, directly or

5  indirectly, have violated, or are violating, and unless enjoined will again violate, Section 17(a)(1)

6  and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

7  <u>**SECOND CLAIM FOR RELIEF**</u>

8  <u>**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**</u>

9  (All Defendants)

10        154.    The Commission realleges and incorporates paragraphs 1 through 153 by

11  reference as if fully set forth herein.

12        155.    Defendants, directly or indirectly, singly or in concert, by use of the means or

13  instruments of transportation or communication in, or the means or instrumentalities of, interstate

14  commerce or by the use of the mails, in connection with the purchase or sale of securities,

15  knowingly or recklessly: a) employed, are employing or are about to employ devices, schemes

16  and artifices to defraud; b) have obtained, are obtaining or are about to obtain money and

17  property by means of untrue statements of material fact or omissions to state material facts

18  necessary in order to make the statements made, in light of the circumstances under which they

19  were made, not misleading; and/or c) have engaged, are engaging or are about to engage in

20  transactions, practices or courses of business which have operated, operate or will operate as a

21  fraud and deceit upon investors.

SEC v. Galas et al. No.          26      Securities and Exchange Commission
Complaint                            Brookfield Place, 200 Vesey Street, Suite 400
                                    New York, NY 10281-1022
                                    (212) 336-0174

1    156.    By reason of the activities herein described, Defendants, singly or in concert,

2    directly or indirectly, have violated, are violating, and unless restrained and enjoined will again

3    violate Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5 (a) and (c) [17

4    C.F.R. §240.10b-5(a) and (c)] promulgated thereunder.

5                              **THIRD CLAIM FOR RELIEF**

6                    **Violations of Section 9(a) of the Exchange Act**

7                                  (All Defendants)

8    157.    The Commission realleges and incorporates paragraphs 1 through 156 by

9    reference as if fully set forth herein.

10    158.    Defendants, directly or indirectly, singly or in concert, by use of the means or

11    instruments of transportation or communication in, or the means or instrumentalities of, interstate

12    commerce or by the use of the mails, knowingly or recklessly, and for the purpose of creating a

13    false or misleading appearance of active trading in securities or a false or misleading appearance

14    with respect to the market for such securities, (a) have effected, are effecting, or are about to

15    effect, transactions in such securities which involved no change in the beneficial ownership

16    thereof, or (b) have entered, are entering, or are about to enter an order or orders for the purchase

17    of such securities with the knowledge that an order or orders of substantially the same size, at

18    substantially the same time, and at substantially the same price, for the sale of any such

19    securities, had been or would be entered by or for themselves or different parties, or (c) have

20    entered, are entering, or are about to enter an order or orders for the sale of such securities with

21    the knowledge that an order or orders of substantially the same size, at substantially the same

1   time, and at substantially the same price, for the purchase of such securities had been or would

2   be entered by or for themselves or different parties.

3       159.    By reason of the foregoing, Defendants have violated, are violating, and unless

4   restrained and enjoined, will again violate Section 9(a)(1) of the Exchange Act [15 U.S.C.

5   §78i(a)(1)].

6                          **FOURTH CLAIM FOR RELIEF**

7                              **(Relief Defendant)**

8       160.    The Commission realleges and incorporates paragraphs 1 through 159 by

9   reference as if fully set forth herein.

10      161.    N. Hawatmeh received, directly or indirectly, without consideration, funds which

11  are the proceeds of the unlawful activities alleged herein and to which she has no legitimate

12  claim.

13      162.    N. Hawatmeh obtained the funds as part of and in furtherance of the securities

14  violations alleged herein and under circumstances in which it is not just, equitable, or

15  consionable for her to retain the funds, and accordingly, N. Hawatmeh has been unjustly

16  enriched by ill-gotten gains.

17      163.    By reason of the foregoing, N. Hawatmeh should disgorge her ill-gotten gains,

18  plus pre-judgment interest.

19                          **PRAYER FOR RELIEF**

20      **WHEREFORE**, the Commission respectfully requests the Court to grant the following

21  relief:

SEC v. Galas et al. No.                 28      Securities and Exchange Commission
Complaint                                        Brookfield Place, 200 Vesey Street, Suite 400
                                                 New York, NY 10281-1022
                                                 (212) 336-0174

1

2
## I.

3    An Order temporarily restraining and preliminarily enjoining Defendants from violating

4 Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 9(a) and 10(b) of the Exchange

5 Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

6
## II.

7    An Order freezing Defendants' and Relief Defendant's assets;

8
## III.

9    An Order permanently restraining and enjoining Defendants and any person or entity

10 acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise

11 interfering with the access of the Commission to, relevant documents, books and records;

12
## IV.

13    An Order requiring Defendants and Relief Defendant each to provide a verified

14 accounting;

15
## V.

16    An Order requiring Defendants to repatriate funds held overseas;

17
## VI.

18    An order authorizing the Commission to conduct expedited discovery;

SEC v. Galas et al. No.            29      Securities and Exchange Commission
Complaint                                   Brookfield Place, 200 Vesey Street, Suite 400
                                            New York, NY 10281-1022
                                            (212) 336-0174

1    **VII.**

2    A Final Judgment finding that Defendants each violated the securities laws and rules

3    promulgated thereunder as alleged against them herein.

4    **VIII.**

5    A Final Judgment permanently restraining and enjoining Defendants from violating

6    Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 9(a) and 10(b) of the Exchange

7    Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5];

8    **IX.**

9    A Final Judgment ordering Defendants jointly and severally to disgorge their ill-gotten

10    gains, if any, plus prejudgment interest;

11    **X.**

12    A Final Judgment ordering N. Hawatmeh to disgorge her ill-gotten gains, if any, plus

13    prejudgment interest;

14    **XI.**

15    A Final Judgment prohibiting Defendants, pursuant to Section 20(g)(1) of the Securities

16    Act [15 U.S.C. § 77t(g)(1)] and Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. §

17    78u(d)(6)(A)], from participating in an offering of penny stock;

18    **XII.**

SEC v. Galas et al. No.                    30          Securities and Exchange Commission
Complaint                                               Brookfield Place, 200 Vesey Street, Suite 400
                                                        New York, NY 10281-1022
                                                        (212) 336-0174

1        A Final Judgment ordering Defendants to pay civil money penalties pursuant to Section

2   20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15

3   U.S.C. § 78u(d)(3)]; and

4                                        **XIII.**

5              Granting such other relief as this Court may deem just and proper.

6   Dated:  August 5, 2014                    Respectfully submitted,

7
8
9
10                                     By:    **/s David Stoelting**
11
12                                            ANDREW M. CALAMARI
13                                                 CalamariA@sec.gov
14                                            AMELIA A. COTTRELL
15                                                 CottrellA@sec.gov
16                                            MICHAEL D. PALEY
17                                                 PaleyM@sec.gov
18                                            DAVID STOELTING
19                                                 (Conditionally Admitted Pursuant to
20                                                 LCR 83.1(c)(2))
21                                                 StoeltingD@sec.gov
22                                            ERIC M. SCHMIDT
23                                                 Schmidte@sec.gov
24                                            MONA AKHTAR
25                                                 AkhtarM@sec.gov
26                                            TEJAL SHAH
27                                                 ShahT@sec.gov
28
29                                            Attorneys for Plaintiff
30                                            SECURITIES AND EXCHANGE
31                                            COMMISSION
32                                            Brookfield Place
33                                            200 Vesey Street, Suite 400
34                                            New York, NY 10281
35                                            Telephone: (212) 336-0174
36                                            Facsimile:  (212) 336-1324

SEC v. Galas et al. No.              31     Securities and Exchange Commission
Complaint                                    Brookfield Place, 200 Vesey Street, Suite 400
                                             New York, NY 10281-1022
                                             (212) 336-0174